UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL J. DAHLSTROM,

        Petitioner,

                                       Case Number 07-10580
v.                                     Honorable David M. Lawson

JAN E. TROMBLEY,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        The petitioner, Karl Dahlstrom, is a Michigan prisoner who challenges several convictions

and sentences in his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

petitioner was convicted by a Tuscola County, Michigan jury in 2004 of first-degree criminal sexual

conduct, two counts of second-degree criminal sexual conduct, and telephone line cutting. He was

sentenced as a second habitual offender to concurrent prison terms of 20 to 60 years, 15 to 22-½

years, and two to three years, respectively. The petitioner completed his telephone-line-cutting

sentence in 2006 before he instituted this action, but he remains incarcerated on the criminal sexual

conduct sentences. He raises several issues regarding the fairness of his trial and sentencing

proceedings and the sufficiency of the evidence against him. The respondent filed an answer in

opposition to the petition disputing the merits of the claims and raising procedural defenses. After

reviewing the record and the submissions, the Court finds that the claim of prosecutorial misconduct

must fail because the state court decided the issue on the basis of an independent and adequate state

procedural rule, and the state courts' decisions on the other issues were not contrary to or an

unreasonable application of federal law as determined by the Supreme Court. Therefore, the Court will deny the petition.

I.

During the early morning hours of August 9, 2003, the petitioner sexually assaulted his former girlfriend, Lori Groth, at her apartment in Caro, Michigan and ripped her telephone from its connection so as to disable it. He was charged with the crimes noted above and proceeded to trial, asserting an alibi. At trial, Groth testified that the petitioner entered her apartment, threatened her and accused her of sleeping with other men, hit and choked her, held her down, ripped at her breasts, and penetrated her with his hand. Richard Campbell, the petitioner's co-worker, testified that he drove the petitioner to Groth's apartment that morning and waited in the car for him. He observed the petitioner throw Groth's telephone into a field and slash her car tires. Police and medical personnel testified that Groth was upset following the assault and that she had injuries consistent with her description of the incident. The petitioner denied going to Caro that morning and denied committing the offense. His alibi defense consisted of testimony by Jim Binder, an acquaintance, and the petitioner himself that the petitioner and Richard Campbell were at Binder's house before 5:00 a.m. on August 9, 2003 for a planned day of fishing. The jury was not convinced.

Following his convictions and sentence, the petitioner filed a motion for new trial challenging the validity of his convictions, his sentence, and trial counsel's handling of his case. The trial court held a hearing during which the petitioner and his original and substitute defense attorneys testified. The trial court denied the motion. The petitioner then filed a direct appeal in the Michigan Court of Appeals, which affirmed the convictions and sentence. *People v. Dahlstrom*, No. 255875, 2005 WL 3238211 (Mich. Ct. App. Dec. 1, 2005) (unpublished). The Michigan Supreme

Court denied leave to appeal in a standard order. *See People v. Dahlstrom*, 475 Mich. 885, 715

N.W.2d 876 (2006).

Mr. Dahlstrom's timely petition contains the following six claims:

I.      Petitioner's convictions should be overturned because there was insufficient
        credible evidence at trial to prove the petitioner guilty of the crimes charged;

II.     The petitioner's convictions must be reversed because the verdict is against
        the great weight of evidence;

III.    The petitioner's sentence was invalid because it was based on inaccurate
        information., i.e. improper scoring of the legislatively imposed sentencing
        guidelines, as well as inaccuracies in the P.S.I., and therefore use of an incorrect
        burden of proof, and therefore, his due process rights were violated, which requires
        resentencing;

IV.     The prosecutors['] action denied the petitioner a fair trial and his due process rights
        under the Michigan and Federal Constitution;

V.      The petitioner should receive a new trial because of incompetence of the
        trial counsel . . . violating petitioner's Sixth Amendment right to effective
        assistance of counsel;

VI.     The trial judge erred by denying the petitioner's motion for new trial.

Habeas Pet. at 5-6.

I.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering applications for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See*

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal

court to issue the great writ only if the state court decision on a federal issue "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2); *Franklin v. Francis*,

144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not "'"an unreasonable application of clearly established Federal law'"" for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. The respondent contends that this claim lacks merit. As an initial matter, the Court notes that the petitioner has completed his sentence for his conviction for telephone line cutting on August 25, 2006. The present petition was filed on February 8, 2007. A writ of habeas corpus may only be granted to a person who is "in custody." 28 U.S.C. §§ 2241(c)(3), 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (explaining that under sections "2241(c)(3) and 2254(a) [and] . . . the common-law history of the writ . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody"). Under sections 2241 and 2254, custody status is determined

at the time that the complaint is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). A person is considered to be "in custody" when his liberty is directly circumscribed by government oversight, such as parole, *Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963), bail, *Hensley v. Mun. Ct., San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 349 (1973), or probation, *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989). However, the Supreme Court has "never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Maleng*, 490 U.S. at 491. It is generally acknowledged that "after a petitioner's sentence for a conviction has completely expired, the collateral consequences of that conviction are insufficient to render him 'in custody' under § 2254(a)." *Clemons v. Mendez*, 121 F. Supp. 2d 1101, 1102-03 (E.D. Mich. 2000) (citing *Maleng*, 490 U.S. at 492)) (additional internal citation omitted). Therefore, the Court has no authority to grant a habeas writ that would affect the telephone line cutting conviction. The Court will limit its discussion to whether the prosecution presented sufficient evidence to support the petitioner's criminal sexual conduct convictions.

The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 229 (2001) (citing *Jackson v. Virginia,* 443 U.S. 307, 316 (1979)); *see also In re Winship,* 397 U.S. 358, 364 (1970). Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The Michigan Court of Appeals applied this standard on direct appeal when it denied relief on this claim, stating:

A person has committed CSC I under MCL 750.520b(1)(f) if the person "(1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v. Nickens*, 470 Mich. 622, 629; 685 N.W.2d 657 (2004). MCL 750.520a(1) defines "personal injury" as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." Here, the victim testified that defendant punched her in the head, choked her, held her down, ripped at her breasts, threatened to kill her, forced her legs apart, and digitally penetrated her. Both the neighbor from whom plaintiff asked for help after the attack and the Caro police officer who responded to the scene testified that following the attack the victim had red marks on her body. Further, the doctor who examined the victim testified that she had facial swelling, along with tenderness, bruising, and redness on other parts of her body. The victim also testified that, after the attack, she felt humiliated and ashamed and that she required counseling and psychiatric medications to help her stay calm and focused. Clearly, a rational trier of fact could find that the prosecutor proved the essential elements of CSC I beyond a reasonable doubt.

With regard to defendant's CSC II convictions, the statute, MCL 750.520c(1), states in relevant part:

> A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. Force or coercion includes, but is not limited to, any of the circumstances listed in section 520b(1)(f)(i) to (v). [MCL 750.520(1).]

MCL 750.520a(n) defines "sexual contact" as:

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (I) Revenge.
> (ii) To inflict humiliation.
> (iii) Out of anger. [MCL 750.520a(n).]

Defendant contends that the prosecutor failed to establish that he touched the victim's breasts for the purpose of sexual arousal or gratification, a sexual purpose, or in a

sexual manner for revenge, to inflict humiliation, or out of anger.  The victim testified that defendant ripped, grabbed, pinched, and pulled at her breasts while referring to her as a "whore" and a "slut."  The evidence shows that defendant expressed that he assaulted the victim because he believed that she was sexually involved with another man.  This supports an inference that defendant was touching her breasts for revenge, to inflict humiliation, or out of anger.

*Dahlstrom*, 2005 WL 3238211, at *1-2.

This decision is neither contrary to *Jackson* nor an unreasonable application of that precedent.  Accepting the victim's testimony in the light most favorable to the prosecution, as the Court must, it is easy to find that all the elements of first-degree criminal misconduct as defined by state law – personal injury, sexual penetration, and the use of force or coercion – were established. Ms. Groth testified that the petitioner yelled at her, called her a "whore" and other derogatory names, threatened her, climbed on top of her, hit her, grabbed her throat, forced her legs open, and penetrated her with his hand, and that she experienced pain and soreness for several days following the incident.  A neighbor, a police officer, and an examining physician confirmed that Ms. Groth suffered physical injuries and was emotionally distraught.  Richard Campbell testified that he drove the petitioner to Ms. Groth's apartment, waited for him for several minutes, and saw the petitioner throw Groth's telephone into a field and slash her tires.  Ample evidence supports the first-degree criminal sexual misconduct conviction.

The same must be said of the second-degree criminal sexual conduct conviction.  Ms. Groth testified that the petitioner accused her of cheating on him, threatened her and called her a "whore" and a "slut," and grabbed, pinched, and pulled at both of her breasts during the assault in her home. That testimony, combined with the testimony of Richard Campbell and those who observed the victim following the incident, was sufficient to establish the petitioner's guilt of two counts of second-degree criminal sexual conduct under Michigan law.

The petitioner's alibi witnesses contradicted Groth's testimony, but it was the jury's job to resolve the evidentiary conflict. *See Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (quoting *Jackson*, 443 U.S. at 326). The Michigan Court of Appeals' determination that the prosecution presented sufficient evidence to support the petitioner's convictions was reasonable. The petitioner is therefore not entitled to relief on this claim.

The petitioner also raises a double jeopardy argument in his petition, asserting that his convictions for both first-degree criminal sexual conduct and second-degree criminal sexual conduct violate the Double Jeopardy Clause because they arose out of the same incident. It is true that the Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision prohibits multiple trials, convictions, and punishments for the same "offense," *see Witte v. United States*, 515 U.S. 389, 391 (1995), but it does not necessarily forbid multiple punishment for the same conduct, *White v. Howes*, 586 F.3d 1025, 1027 (6th Cir. 2009) ("The doctrine regarding the Double Jeopardy Clause draws a crucial distinction between multiple punishments for the same *conduct* (permissible) and multiple punishments for the same *offense* (impermissible)."). "It is well established that the Double Jeopardy Clause does not prohibit a state from defining conduct to constitute two separate criminal offenses." *Id.* at 1027-28 (citing *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983)). That is because "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981); *see also United*

*States v. Kuhn*, 165 F. Supp. 2d 639, 642 (E.D. Mich. 2001).

There are well-established rules of construction that courts apply to discern whether the same conduct can result in multiple punishments. *See Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980); *see also Blockburger v. United States*, 284 U.S. 299 (1932). The Court "focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. . . . If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F.2d 355, 360-61 (6th Cir. 1991) (internal citations and quotation marks omitted). These rules are helpful, but they are not controlling in this case because the petitioner's convictions for first-degree criminal sexual conduct and second-degree criminal sexual conduct were the result of distinct conduct that occurred during the assault on the victim. The state statutes define the respective crimes in terms of a single act of penetration (first-degree) or contact (second-degree), not in terms of a unitary assaultive episode.

The state court of appeals was quite clear in rejecting the petitioner's double jeopardy claim, finding that the multiple punishments were *not* based on identical conduct. That court explained:

> Here, separate and distinct conduct supported each of defendant's convictions. Specifically, defendant used force to digitally penetrate the victim and to make sexual contact with both her right and left breasts. Although the force used to accomplish all three sexual contacts and the resulting personal injury were intermingled, this fact does not prevent defendant's convictions of the separate charges. *See People v. Martinez*, 190 Mich. App. 442, 444-445; 476 N.W.2d 641 (1991). Accordingly, we conclude that defendant's convictions for CSC I and CSC II were each based on distinct conduct and that the Legislature intended that each crime be punished separately.

*Dahlstrom*, 2005 WL 3238211, at *2. This decision is entirely consistent with the Supreme Court's double jeopardy jurisprudence. The petitioner's first-degree criminal sexual conduct conviction

-10-

punishes his use of force to digitally penetrate and injure the victim. The petitioner's two second-degree criminal sexual conduct convictions arise from his use of force to sexually touch each of the victim's breasts. The petitioner's actions were part of one overall assaultive incident, but that matters not at all. The petitioner faced a single trial, and his multiple acts of abusing the victim supported the separate convictions. No double jeopardy violation occurred. The state courts' determination was not contrary to or an unreasonable application of federal law.

## B.

The petitioner also contends that he is entitled to habeas relief because the verdict was against the great weight of the evidence. The respondent contends that this claim is not cognizable upon federal habeas review. The Court agrees. In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576 N.W.2d 129, 137 (1998) (internal quotation omitted); *see* Mich. Comp. Laws § 770.1; Mich. Ct. R. 6.431(B). The Michigan Supreme Court has observed that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Lemmon*, 456 Mich. at 634 n.8, 576 N.W.2d at 133 n.8. The petitioner's claim here alleges an error of state law that is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"). Habeas relief is therefore not warranted on this claim.

## C.

The petitioner argues that his sentence is invalid because the trial court improperly scored

the sentencing guidelines, relied upon inaccurate information in the presentence report, and found facts by a preponderance of evidence beyond the jury's determination.

A sentence may violate the Due Process Clause if the sentencing court relies on materially false information that the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (criminal defendant must have a meaningful opportunity to rebut contested information at sentencing). A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).

The petitioner has made no such showing here. The record reveals that he and defense counsel had an opportunity to challenge the presentence report and to contest the scoring of the offense variables during the sentencing proceedings, and had no objections to the presentence report. The record further indicates that the trial court relied upon the facts of the crime and the petitioner's substance abuse and criminal record in imposing sentence. The petitioner has not shown that the trial court relied upon materially false or inaccurate information. Therefore, he is not entitled to relief on this claim.

The petitioner's claims that the state sentencing guidelines were improperly scored and the judge, not the jury, found facts that established the minimum sentence fare no better. The claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is

based solely on state law claim. *See McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Although, as noted, the petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *Tucker*, 404 U.S. at 447), the essence of his argument is that the trial court mis-scored the sentencing guidelines by finding that the petitioner inflicted psychological injury and aggravated physical abuse upon the victim, exploited a vulnerable victim, and attempted to intimidate a witness. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner's second claim is that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial fact finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because the petitioner's sentence fell within the statutorily-

authorized maximum penalty, which was not enhanced by judicial fact finding, no Sixth Amendment violation occurred.

D.

The petitioner next asserts that he is entitled to habeas relief because the prosecution engaged in misconduct by introducing irrelevant and improper evidence, referring to other acts evidence, because a police officer lied to a witness, mis-characterizing the law, making a civic duty argument, vouching for witness credibility and expressing a personal belief in the petitioner's guilt, appealing to jury sympathy, characterizing the petitioner as "evil," and denigrating the petitioner and his defense. The respondent contends that the state court disposed of these claims based on an independent state procedure that requires a contemporaneous objection to preserve these alleged errors for review. Therefore, the respondent argues, the petitioner's default on the state procedure bars review here.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection or file a motion for a directed verdict. *See Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). "When a state court judgment appears to have rested primarily on federal law or was interwoven with

-14-

federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Federal habeas courts may not grant relief on a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

In this case, the state appellate courts required that a defendant must object at trial to instances of prosecutorial misconduct. Although the Michigan courts "frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import," the contemporaneous objection rule was firmly established with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 791-92 (E.D. Mich. 2006); *see also People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 99-100, 435 N.W.2d 772, 775 (1989). Therefore, the contemporaneous objection rule is an adequate and independent state ground upon which to deny relief.

It also appears that the Michigan courts enforced the procedural rule in this case. The last state court to issue a reasoned opinion on the prosecutorial misconduct claims, the Michigan Court

of Appeals, held that the claims were not preserved because the petitioner "did not timely object to any of the actions he now claims constitute prosecutorial misconduct." *Dahlstrom*, 2005 WL 3238211, at *3. The court then reviewed the unpreserved claims for plain error and found none which warranted relief. *Id*. at *3-6. Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

Because the petitioner has procedurally defaulted these claims, this Court may not review them unless the petitioner demonstrates "cause" for the failure to adhere to the procedural rule, and "prejudice" that flows the application of the rule. *See Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006). The petitioner alleges ineffective assistance of trial counsel as cause to excuse his default. Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). However, to establish constitutionally ineffective assistance of counsel, the petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance means simply

reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

Prejudice results if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

As is evident from the specifics discussed below, the petitioner has not shown that trial counsel's performance was defective or that the petitioner was prejudiced. Defense counsel had an obligation to object to misconduct by the state prosecutor; but the Court finds no instances in this record which should have provoked an objection.

It is well established that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). It is equally well settled, however, that "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd*

*v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The court first determines whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. Flagrancy depends on four factors: 1) whether the actions tended to mislead the jury or prejudice the defendant; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender*, 376 F.3d at 528.

The petitioner first alleges that the prosecutor engaged in misconduct by introducing at trial evidence of the victim's statement to a nurse, a letter written by the petitioner, testimony that the petitioner slashed the victim's tires, testimony recounting the petitioner's vulgar language during the assault, and testimony describing the victim's fearfulness. The Michigan Court of Appeals (and the trial court) determined that this evidence was relevant and admissible under state law. The testimony concerning the victim's hospital statement and fearfulness and evidence that the petitioner slashed her tires and used vulgar language were relevant to prove the elements of the charged offenses. The petitioner's letter constituted an admission and was relevant to his credibility. The prosecutor commits no misconduct by offering evidence that is found relevant and admissible by the trial court. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *see also People v. Noble*, 238 Mich. App. 647, 660, 608 N.W.2d 123, 131 (1999) (prosecutor's good-faith effort to admit evidence does not constitute misconduct). Defense counsel does not perform deficiently by failing to object to admissible evidence. *McQueen*

*v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004).

Second, the petitioner argues that a police detective lied to witness Richard Campbell when he told Campbell that he knew Campbell was at the victim's apartment on the night of the assault; and the petitioner insists that the "misconduct" should be imputed to the prosecutor. However, it is well settled that a police officer's deception during interrogations does not violate the Constitution, and police trickery alone will not invalidate an otherwise voluntary statement. *See Moran v. Burbine*, 475 U.S. 412, 433-34 (1986); *see also Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (interrogator's misrepresentation to suspect that co-suspect had confessed did not render suspect's confession coerced); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067-68 (6th Cir. 1994) (police officer's false statements that police had matched defendant's fingerprints to prints found in victim's van and that two witnesses had identified defendant did not render confession involuntary). The petitioner has failed to show that the police engaged in coercive activity, *see, e.g, Colorado v. Connelly*, 479 U.S. 157, 167 (1986), or that the prosecutor committed misconduct which would warrant habeas relief. Defense counsel did not perform deficiently by failing to object to the statements offered at trial.

Third, the petitioner claims that the prosecutor misstated the law twice, once during voir dire by asking jurors if they agreed that the victim was entitled to a fair trial as was the defendant and once during closing arguments by giving an erroneous definition of assault. A prosecutor in a criminal case may not misstate the law. *Cf. Caldwell v. Mississippi*, 472 U.S. 320 (1985) (a prosecutor in a death penalty case). Perhaps defense counsel should have objected to these representations. However, the record shows that the trial court properly instructed the jurors on the

law and directed them to disregard any conflicting statements by the lawyers.  Jurors are presumed to follow the court's instructions.  *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Even if counsel's performance was deficient on this point, the petitioner has not shown that he was prejudiced.

Fourth, the petitioner asserts that the prosecutor made improper comments during closing arguments by vouching for the victim and referencing her prior consistent statements.  "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility."  *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992).  Improper vouching also may occur when the prosecutor argues evidence not in the record, *Martinez*, 981 F.2d at 871, or when the prosecutor expresses her personal belief in the truthfulness of the witness's testimony, thereby placing the perceived prestige of the prosecutor's office behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999).  A prosecutor, however, may argue from the facts that a witness is or is not worthy of belief.  *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  In this case, the prosecutor's comments on the credibility of witnesses were based on the testimony and evidence admitted at trial.  The prosecutor did not improperly vouch for the victim or any other prosecution witnesses.  Defense counsel did not perform deficiently by not objecting to the prosecutor's remarks.

Fifth, the petitioner claims that the prosecutor appealed to jury sympathy by stating that the attack on the victim was a "life altering event" for her and stating that no one deserved to be treated as the victim was treated.  A prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors."  *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  In this case, however, the prosecutor's remarks reflected the testimony that the victim was traumatized by

the assault; they were intended to explain why the victim's account of the incident was believable. Defense counsel's failure to object to these comments fell within the range of acceptable trial strategy, and there is little likelihood that the petitioner was prejudiced by the comments.

Sixth, the petitioner claims that the prosecutor made a civic duty argument and expressed a personal belief in his guilt by referring to him as "evil." It is improper for a prosecutor to appeal to a jury's sense of civic duty, *see Solivan*, 937 F.2d at 1151, or to express a personal opinion as to a defendant's guilt. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (2002). The prosecutor here did neither; rather he argued that the petitioner was guilty based upon the evidence. Defense counsel committed no error by not objecting. Moreover, potential prejudice to the petitioner was alleviated by the trial court's instructions, which stated that the attorneys' comments were not evidence, that the jurors should decide the case based upon the evidence, that the petitioner was innocent until proven guilty, and that the prosecution had the burden of proving guilt beyond a reasonable doubt.

Seventh, the petitioner claims that the prosecutor expressed a personal belief in his guilt by arguing that touching of the victim's breast was done for a sexual purpose. The record, however, indicates that the prosecutor argued from the evidence that the petitioner touched the victim's breasts in a sexual manner for revenge, for humiliation, or out of anger in order to support the second-degree criminal sexual conduct charges. The prosecutor did not express a personal belief in the petitioner's guilt based upon information outside of the trial evidence; rather, he asserted that the facts fit the elements of the crime. No objection from defense counsel was called for here.

Eighth, the petitioner claims that the prosecutor denigrated him and his defense. It is clearly inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *See, e.g.,*

*United States v. Collins*, 78 F.3d 1021, 1039-40 (6th Cir. 1996). However, as noted, a prosecutor may argue from the facts that a witness, including a defendant, is or is not worthy of belief. *See Portuondo*, 529 U.S. at 69. "Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *Collins*, 78 F.3d at 1040. The prosecutor in this case argued that the petitioner was not worthy of belief and that his guilt had been established beyond a reasonable doubt based upon the evidence. The petitioner has failed to demonstrate that the prosecutor's argument was improper, or that it rendered his trial fundamentally unfair, or that defense counsel was ineffective by not objecting.

Ninth, the petitioner claims that the prosecutor argued facts not in evidence by stating that the victim could not call for help because the handset for her telephone had been thrown away and she could not use the base to make a call. A prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). However, a prosecutor may argue reasonable inferences from the evidence presented at trial. *See Byrd*, 209 F.3d at 535. The prosecutor's argument in this context was based upon a reasonable inference from the testimony that the petitioner threw the victim's telephone handset into a field. The prosecutor did not transgress, and defense counsel err by not objecting.

The petitioner has not shown that defense counsel was constitutionally ineffective, or that the conduct of the prosecutor unfairly prejudiced him. Therefore, he has not shown either cause or prejudice to excuse his procedural default.

Nor has the petitioner shown that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted

in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner has made no such showing. His prosecutorial misconduct claims are thus barred by the doctrine of procedural default.

E.

The petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged sentencing, evidentiary, and prosecutorial errors previously discussed, failing to make a proportionality argument at sentencing, failing to investigate witness David Campbell adequately, failing to obtain the victim's telephone records, failing to have the rape kit analyzed, failing to identify a potential witness, failing to strike one of the jurors, and failing to cross-examine the victim and other witnesses adequately. The Court already has determined that the claimed sentencing, evidentiary, and prosecutorial "errors" do not warrant habeas relief. The same *Strickland* test applies to the other performance issues the petitioner has raised.

The Michigan Court of Appeals applied this standard when it denied relief on the petitioner's ineffective assistance of counsel claims. It concluded that the petitioner failed to establish that counsel erred or that he was prejudiced by counsel's conduct. *Dahlstrom*, 2005 WL 3238211, at *6-8. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

The petitioner's argument that trial counsel should have made a proportionality argument at sentencing holds no water. Defense counsel may have reasonably decided not to pursue that argument given the record he had to work with and the petitioner's history. Furthermore, there is no indication that any such argument would have prevailed at sentencing and resulted in a lesser sentence. The petitioner has not shown that counsel was ineffective in this regard.

The petitioner next asserts that counsel was ineffective for failing to conduct an adequate investigation of his case because counsel should have discovered impeachment evidence for witness Richard Campbell, obtained the victim's telephone records, had the rape kit analyzed, and identified a potential defense witness who was at a bar with the petitioner before the assault. Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Wiggins*, 539 U.S. at 524-29 (holding that the abandonment of an investigation at an unreasonable juncture may prevent counsel from making an informed strategic decision); *Towns*, 395 F.3d at 258. This duty includes an obligation to investigate all witnesses who may have information concerning a defendant's guilt or innocence. *Towns*, 395 F.3d at 258. Courts give considerable deference to counsel's reasonable strategic decisions. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

The record in this case shows that counsel reasonably determined that the telephone records and a rape kit analysis were not necessary because the relationship between the petitioner and the victim was undisputed and the case involved digital rather than penile penetration. As to Richard Campbell and the fellow bar patron, the petitioner has not shown that counsel would have uncovered additional evidence which would have benefitted his defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 178 F.3d

759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief). Moreover, the record indicates that counsel did uncover significant impeachment evidence that helped with Campbell's cross-examination, including the fact that he initially denied taking the petitioner to the victim's apartment and that he and the petitioner had a work dispute. The record also reveals that the bar patron would not have corroborated the petitioner's alibi as to the actual time of the crime. The petitioner has thus failed to show that counsel erred or that he was prejudiced by counsel's investigation.

The petitioner also contends that counsel was ineffective for failing to strike a juror from the panel. The petitioner, however, has not presented any evidence that demonstrates that the juror was biased and unable to decide his case fairly. As noted, conclusory allegations are insufficient to justify habeas relief. *Ibid.* The record also suggests that counsel had previous experience with the same juror and chose not to use a challenge to strike the juror. This Court will not second-guess counsel's strategic decision.

The petitioner next asserts that counsel was ineffective by not adequately cross-examining the victim, the hospital physician, and Richard Campbell. Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be matters of trial strategy. *See Roe*, 528 U.S. at 481. The failure to call witnesses or present other evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). However, contrary to the petitioner's claim, defense counsel cross-examined these witnesses adequately. Counsel questioned both the victim and Campbell about their recollections of the incident, noted possible inconsistencies in their testimony, and challenged their credibility and

motivations for testifying against the petitioner. Counsel also adequately questioned the hospital physician about the victim's injuries in an effort to establish that those injuries were *de minimis*. The petitioner has not shown that further questioning of these witnesses was required or that it would have resulted in the disclosure of information favorable to the defense. He has thus failed to establish that defense counsel was ineffective under the standard set forth in *Strickland*. Habeas relief is not warranted on these claims.

The petitioner also contends that trial counsel should have withdrawn because she admittedly did not like him. That is not necessarily so. There is no Supreme Court case that requires defense counsel to like her client. Rather, a criminal defendant is entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). The Sixth Circuit has explained:

> Conflict of interest cases involve a slightly different standard than that used in traditional ineffectiveness claims. *See* [*Thomas v. Foltz*, 818 F.2d 476, 480 (1987).] Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692. Thus, when an actual conflict of interest exists, prejudice is presumed. *See id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). Thus, while the rule is rigid, it is not a *per se* rule. *See id.*

*United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). To prevail on a conflict of interest claim, a petitioner must point to specific instances in the record that suggest an actual conflict or impairment of his interests. *See Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000); *Thomas*, 818 F.2d at 481.

The Michigan Court of Appeals denied relief on this claim, explaining that the petitioner had "not shown that he disagreed with his counsel's overall trial strategy, that they had a legitimate

difference of opinion regarding trials tactics, or any other basis that might be considered good cause" for substitution of counsel and finding that the petitioner had not shown that counsel's "dislike for him impacted her representation." *Dahlstrom*, 2005 WL 3238211, at *9. This decision is neither contrary to nor an unreasonable application of Supreme Court precedent. The petitioner fails to point to specific instances in the record that show trial counsel sided with the prosecution or failed to subject his case to meaningful adversarial testing. The petitioner has not shown that counsel expressed her dislike of the petitioner or a belief in his guilt to the jury or the court, nor has he shown that counsel acted or failed to act based upon her personal view of him. The petitioner has failed to establish that defense counsel operated under a conflict of interest or otherwise abandoned her duty of loyalty. Habeas relief is not warranted on this claim.

F.

Lastly, the petitioner asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a new trial. However, the motion for new trial presented no issues that have not been discussed already in this opinion. Habeas relief is not warranted on this claim.

III.

The petitioner has not established that he is presently in custody in violation of the Constitution or the law of the United States.

Accordingly, it is **ORDERED** that his petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 23, 2010

-27-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 23, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO